**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| MELVIN CORNELIUS, on behalf of himself and others similarly situated,<br><br>                              Plaintiff,<br>    v.<br><br>DEERE CREDIT SERVICES, INC.,<br><br>                              Defendant. | Case No.: 4:24-cv-25-RSB-CLR |

**PLAINTIFF'S AMENDED CONSENT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

### Introduction

As a result of arm's length negotiations before an experienced neutral, Plaintiff Melvin Cornelius and Defendant Deere Credit Services, Inc. ("DCSI") reached an agreement to resolve this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Mr. Cornelius now seeks preliminary approval of the parties' class action settlement agreement ("Agreement").[1]

The Agreement requires DCSI to pay $1.5 million into a non-reversionary common fund from which participating Settlement Class Members will receive payments. Participating Settlement Class Members are expected to receive at least $2,500 each—a tremendous result by any measure. In exchange, Settlement Class Members will release certain claims under the TCPA against DCSI.

---

[1] The Agreement includes an addendum executed on September 24, 2024, which is attached as Exhibit A. The original Agreement and its exhibits were previously filed with this Court. ECF No. 25-1 at 11-67. The addendum modifies Section III.L.2 of the Agreement and updates the Agreement's exhibits. For ease of reference, the original Agreement is refiled here as Exhibit B. Capitalized terms in this motion have the same meanings as in the Agreement.

Not only does the settlement constitute an outstanding result whereby participating Settlement Class Members stand to receive thousands of dollars each, but no settlement funds will revert to DCSI. Mr. Cornelius and Class Counsel respectfully submit that the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. This is especially so in light of the substantial risks and uncertainties of protracted litigation.

Accordingly, Mr. Cornelius respectfully requests that this Court enter the accompanying agreed order granting preliminary approval of the settlement.

DCSI does not oppose this relief.

## Summary of the Settlement

**I.    Mr. Cornelius alleges that DCSI violated the TCPA by placing calls with an artificial or prerecorded voice to wrong or reassigned cellular telephone numbers. DCSI denies Mr. Cornelius's allegations, and denies it violated the TCPA.**

Congress enacted the TCPA in 1991 to address privacy and harassment concerns arising from certain telemarketing practices that escaped state invasion of privacy and nuisance statutes by operating interstate. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012).[2] To that end, the TCPA makes it unlawful to place calls to a cellular telephone with an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1)(A)(iii); *accord Hylton v. Titlemax of Va., Inc.*, No. 4:21-cv-163, 2022 WL 16753869, at *3 (S.D. Ga. Nov. 7, 2022) (Baker, J.). "Prior express consent" of the called party is an affirmative defense to a TCPA claim. *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012) *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

Here, Mr. Cornelius's claims are relatively straightforward: DCSI placed calls to Mr. Cornelius's cellular telephone number even though he was not a DCSI accountholder and did not owe money that DCSI was trying to collect. Rather, DCSI made the calls to Mr. Cornelius while

---

[2]    Emphasis is added, and internal quotations and citations are omitted, unless otherwise noted.

attempting to reach someone else—its customer who it alleges had a past-due account balance. Discovery indicates that the party DCSI attempted to reach changed their phone number at some point after providing it to DCSI. This cellular telephone number was then reassigned to Mr. Cornelius.

Significantly, DCSI called approximately 6,500 different telephone numbers, during the settlement class period, for which its records include a wrong number indication. However, not all of these telephone numbers are cellular telephone numbers.[3] Based on DCSI's analysis, it believes that approximately half of the numbers at issue are cellular and thus potentially included in the Settlement Class. As part of the class notice process, all potentially affected telephone numbers will be analyzed to determine whether they are cellular telephone numbers and, if so, eligible for inclusion in the Settlement Class.

## II.    Despite facing significant obstacles to proving liability and attaining class certification, Mr. Cornelius's litigation efforts resulted in an extraordinary recovery for consumers who received robocalls from DCSI.

While Mr. Cornelius believes strongly in his claims—as the settlement amount confirms—DCSI vehemently disputes that it violated the TCPA. To that end, DCSI raised a host of defenses. For example:

- DCSI contended that it did not use an automatic telephone dialing system or a prerecorded voice in connection with outbound calls, and thus class members' claims would fail. ECF No. 10 at 8;

- DCSI suggested that class members may have consented to its calls, and consent is a complete defense to a TCPA claim. *Id*. at 10-11;

- DCSI argued that its calls fall under a Federal Communications Commission safe harbor, 47 C.F.R. § 64.1200(c)(2), and thus it had a defense to many claims at issue. *Id*. at 11.

---

[3]    Under 47 U.S.C. § 227(b)(1)(A)(iii), calls to landlines are not actionable. As a result, only calls to cellular telephones are subsumed within the Settlement Class definition.

- DCSI asserted 39 separate defenses and affirmative defenses, *see id*. at 8-14, any of which could have curtailed—or eliminated—class members' claims; and

- Mr. Cornelius faced significant risks in obtaining class certification as several courts in this Circuit have refused to certify TCPA class actions, making the likelihood of certification uncertain. *See, e.g.*, *Tillman v. Ally Fin. Inc.*, No. 16-313, 2017 WL 7194275 (M.D. Fla. Sept. 29, 2017); *Shamblin v. Obama for America*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765 (M.D. Fla. Apr. 27, 2015).

Against this backdrop, and after sufficient fact discovery for the parties to assess potential damages and the strengths and weaknesses of the claims, the parties mediated this case on June 25, 2024 before Seamus Duffy.[4] With Mr. Duffy's substantial assistance, the parties reached an agreement to resolve this matter.

## III.    The settlement provides for a non-reversionary common fund of $1.5 million.

The Agreement defines a settlement class under Rule 23(b)(3) comprised of:

All persons throughout the United States (1) to whom Deere Credit Services, Inc. placed a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a Deere Credit Services, Inc. customer or accountholder, (3) in connection with which Deere Credit Services, Inc. used an artificial or prerecorded voice, (4) from February 2, 2020 through June 25, 2024.

Participating Settlement Class Members who aver that they received artificial or prerecorded voice calls on their cellular telephones from DCSI and are not DCSI customers or accountholders will receive a pro-rata share of the settlement fund, after attorneys' fees and expenses and notice and administration costs are deducted. While the exact per-claimant recovery will not be known until Settlement Class Members are provided with an opportunity to submit claims, given historical claims rates in TCPA cases, each participating Settlement Class Member is likely to receive between $2,500 and $3,750, after deducting settlement-related costs.

---

[4]    https://www.akingump.com/en/lawyers-advisors/seamus-c-duffy (last visited Sept. 20, 2024).

Subject to Court approval, an award of attorneys' fees and expenses, the costs of notice and administration, and a payment to Mr. Cornelius in exchange for providing a general release to DCSI also will be deducted from the fund. To that end, Mr. Cornelius will seek $5,000 in exchange for providing a general release. Class Counsel also will seek the reimbursement of litigation costs and expenses not to exceed $10,000, and an award of attorneys' fees not to exceed one-third of the settlement fund. Of note, DCSI has not agreed to Class Counsel's request for an award of attorneys' fees, costs, and expenses. There is no "clear sailing" provision here. As such, DCSI is free to oppose Class Counsel's request for an award of attorneys' fees, costs, and expenses. Moreover, this Court's approval of the requested awards is not a condition of the settlement.

The Agreement also requires a robust notice program, including direct mail notice to each Settlement Class Member who can be identified through DCSI's call records, the creation of a dedicated settlement website, and toll-free telephone number for Settlement Class Member inquires.

**Argument**

I.    **The proposed Settlement Class satisfies the requirements of Rule 23 and should be certified for settlement purposes.**

To certify the proposed Settlement Class, Mr. Cornelius must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation, as well as Rule 23(b)(3). *See McGaffin v. Cementos Argos, S.A.*, No. 4:16-cv-104, 2019 WL 13280269, at *4 (S.D. Ga. Aug. 30, 2019 ) (Baker, J,); *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 683-84 (S.D. Fla. 2013) (certifying TCPA class action). And particularly because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court

need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

Of note, district courts often certify wrong number TCPA class actions like this one because they readily satisfy the requirements of Rule 23. *See, e.g.*, *Samson v. United Healthcare Servs. Inc.*, No. 2:19-cv-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (certifying a "wrong number" TCPA class over objection); *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) (same);[5] *Williams v. PillPack LLC*, 343 F.R.D. 201 (W.D. Wash. 2022) (same); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021) (same); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) (same); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018) (same), *decertified per agreement of the parties*, 2020 WL 1846165 (S.D. Fla. Mar. 18, 2020); *Lavigne v. First Cmty. Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (same); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (same); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (same); *accord Brown v. DirecTV, LLC*, No. CV 13-1170 DMG (EX), 2021 WL 5755044 (C.D. Cal. Dec. 1, 2021) (denying a motion to decertify a "wrong number" TCPA class); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) (certifying two "non-debtor" TCPA classes over objection).

### A.     The class is so numerous that joinder is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement of Rule 23(a) is satisfied by the impracticability of joinder, which is generally presumed if a putative class amounts

---

[5]     Undersigned counsel Greenwald Davidson Radbil PLLC is Court-appointed Class Counsel in *Head* and was Court-appointed Class Counsel in *Wesley*, *Knapper*, *Reyes*, and *Johnson*.

to more than forty individuals." *Holman v. Student Loan Xpress, Inc.*, No. 9:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009). Here, because the Settlement Class is believed to contain several thousand members throughout the United States, numerosity is satisfied. *See McGaffin*, 2019 WL 13280262, at *4 (class of nearly 600 "meets the numerosity requirement."); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 WL 12533121, at *8 (S.D. Fla. Aug. 3, 2015) ("Here, the numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of more than a thousand class members, and joinder of all such persons is impracticable.").

> **B.    Questions of law and fact are common to the class.**

"Commonality is satisfied by the existence of at least one issue affecting all or a significant number of proposed class members." *Holman*, 2009 WL 4015573, at *2. "To meet the commonality requirement, the moving party must demonstrate that the class action involves issues susceptible to class-wide proof." *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 659 (M.D. Fla. 2015) (certifying class action) (citing *Cornelius v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)). Notably, "Rule 23 does not require that all the questions of law and fact raised by the dispute be common." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986).

Here, Settlement Class Members' claims stem from the same circumstances, in that DCSI made calls to Settlement Class Members' cellular telephones, using an artificial or prerecorded voice, which are alleged to be in violation of the TCPA. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) (granting preliminary approval to wrong number TCPA settlement); *see also Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) ("The proposed class also satisfies commonality and typicality. Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone.").

Thus, common questions include whether DCSI used an artificial or prerecorded voice as

defined by the TCPA in connection with the calls at issue, and whether DCSI is liable for calls made to allegedly wrong or reassigned numbers. Accordingly, the commonality requirement is satisfied. *See James*, 2016 WL 6908118, at *1 ("Second, a common question of fact, whether Chase auto-dialed each person's phone, unites the class."); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-1290, 2013 WL 444619, at *2 (S.D. Cal. Feb. 5, 2013) ("Here, the proposed class members' claims stem from the same factual circumstances, in that the calls were made by Wells Fargo to class members . . . using auto-dialing equipment or with a prerecorded voice message. There are also several common questions of law, including: (1) whether Wells Fargo negligently violated the TCPA; (2) whether Wells Fargo willfully or knowingly violated the TCPA; and (3) whether Wells Fargo had 'prior express consent' for the calls. Accordingly, the commonality requirement is met."); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 4155361, at *6 (S.D. Cal. Sept. 5, 2008) ("In my judgment, the commonality requirement is met here. The putative class claims stem from the same alleged conduct, *i.e.,* NCO allegedly calling consumers on their cellular telephones, or other wireless devices, without 'prior express consent,' using an 'automatic telephone dialing system' or an 'artificial or prerecorded voice.' The putative class claims are legally and factually similar.").

C.    **The claims asserted by Mr. Cornelius are typical of the claims of Settlement Class Members.**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, DCSI called Mr. Cornelius's cellular telephone number while intending to reach someone else. Because Mr. Cornelius is not, and never was, a DCSI accountholder, Mr. Cornelius is a member of the Settlement Class, and he possesses the same interests, asserts identical claims, and seeks identical relief on behalf of all members of the Settlement Class. *Gehrich*, 2016 WL 806549, at *4 ("All class members allegedly received calls or

text messages from Chase in violation of the TCPA, and that is enough to satisfy the typicality requirement.").

**D.    Mr. Cornelius and his counsel will continue to fairly and adequately protect the interests of the Settlement Class.**

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[C]lass counsel and the class representatives are adequate representatives of the class if (1) plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and (2) the plaintiffs lack interests antagonistic to those of the rest of the class." *Holman*, 2009 WL 4015573, at *2.

As set forth above, Mr. Cornelius's claims are aligned with the claims of the Settlement Class, and he therefore has every incentive to vigorously pursue class members' claims, as he has done to date. To that end, Mr. Cornelius has been actively involved in this litigation since its inception.

In addition, Mr. Cornelius retained the services of firms with deep experience with consumer protection class actions generally, and TCPA class actions specifically. *See* ECF No. 25-1 at 2-8, ¶¶ 10-37; ECF No. 25-2 at 1-3, ¶¶ 5-8, 12.

**E.    Common questions predominate over any individual issues.**

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Here, the Settlement Class satisfies Rule 23(b)(3).

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an

individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Here, the central legal issue before this Court is whether DCSI's calls to Settlement Class Members—who by definition were not DCSI accountholders—violated the TCPA. Additional common questions include whether DCSI used an artificial or prerecorded voice in connection with its calls, and whether DCSI is liable for alleged "wrong number" calls—that is, whether DCSI violated the TCPA by placing calls intended for the customers it was trying to reach but whose phone numbers were potentially reassigned to different persons. These common questions predominate over any individual issues. *James*, 2016 WL 6908118, at *1 ("Also, the class satisfies Rule 23(b)(3)'s predominance requirement. Class-wide proof can answer the predominant questions (whether Chase auto-dialed each person and whether each call violates the TCPA)."); *see also Malta*, 2013 WL 444619, at *4 ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met."). Further, predominance is buttressed because each class member "is eligible to receive an identical pro-rata share of the settlement fund, suggesting that there is no need for an individualized determination of the share each class member is entitled to." *Lo v. Oxnard European Motors, LLC*, No. 11-1009, 2011 WL 6300050, at *3 (S.D. Cal. Dec. 15, 2011).

**F.      Class treatment is superior to other available methods for the fair and efficient adjudication of the claims here.**

Because the claims in this case all arise from the same conduct on the part of DCSI, this class action settlement is the superior vehicle for determining the rights of absent class members. Fed. R. Civ. P. 23(b)(3); *see Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (certifying TCPA class action and finding that, "[g]iven the large number of purported members in this suit and the similarity of their claims, disposition by class action is an efficient use of judicial resources.").

Indeed, resolving the claims of thousands of persons through one settlement class is superior to the potential for numerous duplicative lawsuits, and the high likelihood that many meritorious claims will go unredressed. *See Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 294 (M.D. Ga. 2016) ("separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.").

## II. This Court should preliminarily approve the settlement as "fair, reasonable, and adequate" under Rule 23(e).

Rule 23(e) requires that this Court make a preliminary determination of fairness for the class settlement presented:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004).

"The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the 'range of reasonableness.'" *Gevaerts*, 2015 WL 12533121, at *6. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Id.* When evaluating the fairness of a class action settlement, "courts are guided by the 'strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'" *Id.* at *5 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). "The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise

overwhelm any potential benefit the class could hope to obtain." *Gevaerts*, 2015 WL 12533121, at

\*6 (citing, *e.g.*, *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla.

2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that

have the well-deserved reputation as being most complex.")).

While a full fairness inquiry is unnecessary at the preliminary approval stage, the Eleventh

Circuit has identified six factors to be considered in analyzing the fairness of a class action

settlement under Rule 23(e): "(1) the likelihood of success at trial; (2) the range of possible recovery;

(3) the point on or below the range of possible recovery at which a settlement is fair, adequate and

reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of

opposition to the settlement; and (6) the stage of the proceedings at which the settlement was

achieved." *Bennett*, 737 F.2d at 986; *see also Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527,

1530 (11th Cir. 1994).

Rule 23(e) likewise requires a court to consider several additional factors, including that the

class representative and class counsel have adequately represented the class, and that the settlement

treats class members equitably relative to one another. Fed. R. Civ. P. 23(e). Each relevant factor

supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable, and

should be preliminarily approved.

### A.   The settlement was the product of arm's length negotiations by experienced counsel, and the result of mediation before a highly regarded neutral.

The parties' arm's-length settlement negotiations, which were overseen by Mr. Duffy,

demonstrate the fairness of the settlement, and that the settlement is not a product of fraud or

collusion. *See James*, 2016 WL 6908118, at \*2 ("No indication appears that the settlement resulted

from collusion. Rather, the parties settled with the assistance of court-appointed mediator Robert M.

Daisley."). In addition, the parties' settlement discussions occurred after sufficient written discovery

so that the parties could assess the number of potentially affected persons and the strengths and weaknesses of the claims at issue.

As a result, the parties—and counsel with extensive experience in TCPA litigation—were able to properly assess the strengths and weaknesses of their positions and evaluate the fairness of the settlement.

**B.      The complexity, expense and likely duration of the litigation favors preliminary approval of the settlement.**

There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (noting "a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources").

This case was no different. Significant motion practice lay ahead, including a motion for class certification and competing motions for summary judgment. Given the considerable work already performed—and the work left to perform, including any appeals—settlement was warranted. *See, e.g.*, *Bennett*, 96 F.R.D. at 349-50 (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial").

**C.      The factual record is sufficiently developed to enable Mr. Cornelius and Class Counsel to make a reasoned judgment concerning the settlement.**

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At

the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

As noted above, the parties engaged in significant written discovery, focused both on Mr. Cornelius's individual claims and on those of absent class members. The settlement was, therefore, consummated when the parties were well-informed regarding the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

> **D.**    **The probability of Mr. Cornelius's success on the merits and the range of possible recovery favor preliminary approval.**

The Court is also to consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). However, that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350. This is because a settlement must be evaluated in light of the attendant risks with litigation. *Id.* These factors also weigh in favor of the settlement here.

While Mr. Cornelius believes strongly in his claims, by any objective assessment he faced real hurdles to obtaining class-wide relief. Despite these obstacles, and with the assistance of a highly respected mediator, Mr. Cornelius negotiated a settlement that compares extremely favorably to other TCPA class action settlements. Dividing the settlement fund ($1.5 million) by 3,250 (the

approximate number of cellular telephone numbers at issue) amounts to more than $460 per potentially affected cellular telephone number. In comparison, in *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla. Jan. 30, 2015), final approval was granted in a similar wrong number TCPA class action for $2.63 per person (settling claims of 3 million class members for $7.9 million)—far less than the amount Settlement Class Members will receive here. *See also Wesley v. Snap Fin. LLC*, No. 2:20-cv-00148-RJS-JCB, 2023 WL 1812670 (D. Utah Feb. 7, 2023) ($77.10 per potentially affected telephone number); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 WL 1794559 (E.D. Mo. Feb. 7, 2023) ($6.42 per potentially affected telephone number); *Lucas v. Synchrony Bank*, No. 4:21-cv-70-PPS, ECF No. 47 (N.D. Ind. Nov. 18, 2022) (approximately $13 per potentially affected telephone number); *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) (preliminary approval of wrong-number TCPA settlement amounting to $1.269 million, or approximately $7 per class member); *James*, 2016 WL 6908118, at *1 (preliminary approval of wrong number TCPA settlement for $5.55 per person).

Indeed, the settlement provides immediate cash relief to the Settlement Class. After deducting the requested attorneys' fees, expenses, and notice and administration costs, and given typical claims rates in TCPA class actions—each participating Settlement Class Member should receive between $2,500 and $3,750, an amount that greatly exceeds the typical recovery in TCPA class action settlements. *See James*, 2016 WL 6908118, at *2 ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action.") (citing *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (Holderman, J.) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action)).

In sum, the settlement here constitutes an objectively excellent result for the Settlement Class. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—far less than the expected recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

Thus, given the significant risks in continued litigation and the substantial expected recoveries for participating Settlement Class Members, this settlement is fair, reasonable, and adequate.

**E.    The opinions of Mr. Cornelius and Class Counsel favor preliminary approval.**

As noted above, Class Counsel are highly experienced in class action litigation, having litigated consumer protection cases on a class-wide basis in many jurisdictions, including those under the TCPA. Mr. Cornelius and Class Counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of Settlement Class Members.

Further, a strong initial presumption of fairness should attach to the proposed settlement because it was reached by experienced counsel after arm's-length negotiations. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

For all of the foregoing reasons, this Court should preliminarily approve the settlement.

**F.    The settlement treats Settlement Class Members equitably.**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should

consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each Settlement Class Member will be treated equitably as each participating Settlement Class Member will receive an equal portion of the common fund after deducting attorneys' fees, costs, expenses, a payment to Mr. Cornelius in exchange for his general release in favor of DCSI, and the costs of class notice and administration.

Moreover, the release affects each Settlement Class Member in the same way. As such, this factor also supports preliminary approval.

### III.    The proposed plan of notice satisfies the requirements of Rule 23 and due process.

Pursuant to Rule 23(e), upon preliminary approval, this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Such notice must be the "best notice practicable," see Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

In short, "[t]he adequacy of class notice is measured by reasonableness," and "[t]he notice must provide the class members with information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action." *Roundtree v. Bush Ross, P.A.*, No. 8:14-cv-357-T-37AEP, 2015 WL 5559461, at *1 (M.D. Fla. Sept. 18, 2015) (quoting *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011)).

Here, and after a competitive bidding process, the parties have agreed to a robust notice program to be administered by a well-regarded third-party class administrator—Verita Global ("Verita"), formerly known as KCC Class Action Services, LLC—which will use all reasonable

efforts to provide direct mail notice to each potential Settlement Class Member. Verita will perform reverse look ups of the telephone numbers notated by DCSI as potential wrong or reassigned numbers to identify (1) those which are cellular telephone numbers and (2) for the cellular telephone numbers identified, associated names and addresses. Addresses of potential Settlement Class Members will be updated through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. Each person identified through this process will be sent, via U.S. mail, a postcard notice with a detachable claim form in the forms attached to the Addendum as Exhibits 1 and 2. Notice may also be supplemented through email, in the form attached to the Addendum as Exhibit 3. To submit a valid claim, Settlement Class Members must aver that they received prerecorded calls from DCSI on their cellular telephones during the class period and that they were not DCSI accountholders.

Separately, Verita will establish a dedicated settlement website (www.DCSITCPAsettlement.com) through which Settlement Class Members can review relevant documents filed with this Court, review the question-and-answer notice (attached as Exhibit 4 to the Addendum), and submit claims.

In addition, Verita will establish a toll-free phone number, through which Settlement Class Members can request additional information and have questions about the settlement answered.

The parties have strived to make it as convenient as possible for Settlement Class Members to learn of and participate in the settlement. *See Bonoan v. Adobe, Inc.*, No. 3:19-cv-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) (preliminarily approving TCPA class action settlement, approving materially identical notice plan, and noting that "KCC will utilize established third-party vendors to obtain contact information for potential class members in a manner consistent with

industry standard in wrong number TCPA class actions."); *see also Knapper v. Cox Commc'ns, Inc.*, No. 2:17-cv-00913-SPL, Doc. 120 (D. Ariz. Jul. 12, 2019) (approving the use of reverse look-ups, publication notice, and the form and substance of materially similar postcard notice, postcard claim form, and question and answer notice, and finding that the proposed form and method for notifying settlement class members of the settlement met the requirements of Rule 23(c)(2)(B) and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled to the notice).

The plan complies with Rule 23 and due process because, among other things, it informs Settlement Class Members, directly, of: (1) the nature of this action; (2) the essential terms of the settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection or exclusion, including the time and method for objecting or requesting exclusion, and that Settlement Class Members may make an appearance through counsel; (5) information regarding Class Counsel's request for an award of attorneys' fees and reimbursement of litigation costs and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B); *accord James*, 2016 WL 6908118, at *2 (approving materially identical notice plan in wrong number TCPA class action).

In short, because this notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it.

## IV. This Court should schedule a final fairness hearing.

The final step in the settlement approval process is a final fairness hearing at which this Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). This Court will determine at or after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule

23(e). The parties respectfully request that this Court set a date for a hearing on final approval, at the Court's convenience, approximately five months after the Court's preliminary approval of the settlement.

## V.    This Court should stay any related proceedings.

Lastly, while the parties are unaware of any related proceedings at this time, this Court should stay any future related proceedings until this matter is concluded, as is customary in connection with nationwide class action settlements.

**Conclusion**

Mr. Cornelius respectfully requests that this Court preliminarily approve the settlement and enter the proposed order submitted by the parties, appoint him as class representative, and appoint his counsel as Class Counsel.

Date: September 24, 2024          */s/ Michael Greenwald*
                                  Michael L. Greenwald (admitted *pro hac vice*)
                                  GREENWALD DAVIDSON RADBIL PLLC
                                  5550 Glades Road, Suite 500
                                  Boca Raton, FL 33431
                                  Tel: (561) 826-5477
                                  mgreenwald@gdrlawfirm.com

                                  Anthony I. Paronich (admitted *pro hac vice*)
                                  PARONICH LAW, P.C.
                                  350 Lincoln Street, Suite 2400
                                  Hingham, MA 02043
                                  Tel: (617) 485-0018
                                  Fax: (508) 318-8100
                                  anthony@paronichlaw.com

                                  Steven H. Koval
                                  THE KOVAL FIRM, LLC
                                  3575 Piedmont Rd., NE 15
                                  Piedmont Center, Suite 120
                                  Atlanta, GA 30305
                                  Tel: (404) 513-6651
                                  Steve@KovalFirm.com

                                  *Class Counsel*