UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MELVIN CORNELIUS, on behalf of himself and others similarly situated,<br><br>                  Plaintiff,<br>v.<br><br>DEERE CREDIT SERVICES, INC.,<br><br>                  Defendant. | Case No.: 4:24-cv-25-RSB-CLR |

**PLAINTIFF'S CONSENT MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

**Introduction**

As the result of the resolution of this Telephone Consumer Protection Act ("TCPA") class action, Defendant Deere Credit Services, Inc. ("DCSI") created a non-reversionary, all-cash common fund in the amount of $1.5 million for the benefit of Settlement Class Members ("Settlement").[1] Each of the 236 participating Settlement Class Members stands to receive approximately $3,930.[2] This is a tremendous result in light of the serious risks and uncertainties associated with continued litigation, and compares extremely favorably to other TCPA class action settlements.

This Court preliminarily approved the Settlement on September 25, 2024. *See* ECF No. 29. Thereafter, the class administrator—Verita Global ("Verita")—sent the Court-approved notice by

---

[1] The Settlement Agreement can be found at ECF No. 25-2 and the Addendum to the Settlement Agreement can be found at ECF No. 28-2. All capitalized terms used herein have the same definitions as those defined in the Agreement.

[2] This expected per-claimant recovery accounts for notice and administration costs, and an award of attorneys' fees, costs, and litigation expenses. *See* ECF No. 30. The per-claimant recovery may change if additional late claims are received or if any claims are subsequently discovered to be duplicates or otherwise invalid.

1

U.S. Mail, with a detachable claim form, to potential Settlement Class Members. In addition, Verita published notice of the Settlement on a dedicated website, www.DCSITCPAsettlement.com. After a robust notice campaign, no objections were made to the Settlement, nor did any persons seek exclusion.[3] Moreover, no objections resulted from notice provided to governmental agencies under the Class Action Fairness Act. In light of the Settlement's superb benefits and the lack of opposition from Settlement Class Members, Melvin Cornelius ("Plaintiff") respectfully requests that this Court finally approve the Settlement and enter the accompanying agreed order and final judgment.

Neither DCSI nor any Settlement Class Members oppose this relief.

## Summary of the Settlement

**I.     Plaintiff alleges that DCSI violated the TCPA by placing calls with an artificial or prerecorded voice to wrong or reassigned cellular telephone numbers. DCSI denies Plaintiff's allegations, and denies it violated the TCPA.**

Congress enacted the TCPA in 1991 to address privacy and harassment concerns arising from certain telemarketing practices that escaped state invasion of privacy and nuisance statutes by operating interstate. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012).[4] To that end, the TCPA provides, in relevant part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A)     to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) by using any automatic telephone dialing system or an artificial or prerecorded voice—
>
>                           \*   \*   \*
>
> (iii)     to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other

---

[3]     The objection and exclusion deadline passed on January 10, 2025. *See* ECF No. 29 at 8.

[4]     Emphasis is added, and internal quotations and citations are omitted, unless otherwise noted.

2

> radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii); *accord Hylton v. Titlemax of Va., Inc.*, No. 4:21-cv-163, 2022 WL 16753869, at *3 (S.D. Ga. Nov. 7, 2022) (Baker, J.).

A caller has a complete defense to a TCPA claim if it can demonstrate that it made calls with the prior express consent of the called party. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012) *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

At issue here are calls DCSI placed, in connection with which it used a prerecorded voice, to Plaintiff's cellular telephone number and to the cellular telephone numbers of Settlement Class Members. DCSI made these calls while attempting to reach its own customers regarding past-due accounts. The central question at issue is whether these calls violate the TCPA. DCSI maintains that it did not violate the TCPA, that it was entitled to rely on consent that its customers provided, that others could have provided valid consent on Plaintiff's behalf, and that, regardless, class certification (other than for settlement purposes) is improper.

**II.   Despite facing significant obstacles to proving liability and attaining class certification, Plaintiff's litigation efforts resulted in an extraordinary recovery for consumers who received unwanted robocalls from DCSI.**

While Plaintiff believes strongly in his claims—as the settlement amount confirms—DCSI vehemently disputes that it violated the TCPA. To that end, DCSI raised a host of defenses. For example:

- DCSI contended that it did not use an automatic telephone dialing system or a prerecorded voice in connection with outbound calls, and thus class members' claims would fail. ECF No. 10 at 8;

- DCSI suggested that class members may have consented to its calls, and consent is a complete defense to a TCPA claim. *Id.* at 10-11;

- DCSI argued that its calls fall under a Federal Communications Commission safe harbor, 47 C.F.R. § 64.1200(c)(2), and thus it had a defense to many claims at issue. *Id.* at 11.

3

- DCSI asserted 39 separate defenses and affirmative defenses, *see id.* at 8-14, any of which could have curtailed—or eliminated—class members' claims;

- Plaintiff faced significant risks in obtaining class certification as several courts in this Circuit have refused to certify TCPA class actions, making the likelihood of certification uncertain. *See, e.g.*, *Tillman v. Ally Fin. Inc.*, No. 16-313, 2017 WL 7194275 (M.D. Fla. Sept. 29, 2017); *Shamblin v. Obama for America*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765 (M.D. Fla. Apr. 27, 2015); and

- Even had Plaintiff succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the statutory damages award [under the TCPA] to permit reassessment of that question guided by the applicable factors").

Against this backdrop, and after sufficient fact discovery for the parties to assess potential damages and the strengths and weaknesses of the claims, the parties mediated this case on June 25, 2024 before experienced class action attorney and mediator Seamus Duffy.[5] With Mr. Duffy's substantial assistance, the parties reached an agreement to resolve this matter.

### III. The Settlement provides for a non-reversionary common fund of $1.5 million, resulting in payments of more than $3,900 to participating Settlement Class Members.

The Agreement defines a settlement class under Rule 23(b)(3) comprised of:

All persons throughout the United States (1) to whom Deere Credit Services, Inc. placed a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a Deere Credit Services, Inc. customer or accountholder, (3) in connection with which Deere Credit Services, Inc. used an artificial or prerecorded voice, (4) from February 2, 2020 through June 25, 2024.

Participating Settlement Class Members who received one or more prerecorded voice calls from DCSI between February 2, 2020 and June 25, 2024 and who never were DCSI customers or accountholders will receive a *pro-rata* share of the settlement fund, after attorneys' fees, costs, and expenses are deducted. *See* ECF No. 30. Based on the 236 timely claims received to date, it is expected that each claimant will receive approximately $3,930.00. In exchange, Settlement Class

---

[5] https://www.seamusduffymediation.com/ (last visited Jan. 28, 2025).

Members will release their claims arising out of calls DCSI placed to their cellular telephones during the class period.

### Class Notice and Claims

Verita successfully delivered notice to potential Settlement Class Members in accordance with this Court's Preliminary Approval Order. *See* ECF No. 32 (Declaration of Gio Santiago re: Notice Procedures).

*Direct Mail Notice*: Verita delivered direct mail notice, via U.S. Mail, to potential Settlement Class Members, which included summary notice of the Settlement and a detachable, straightforward claim form. Verita identified names and addresses of potential Settlement Class Members by performing reverse look ups of telephone numbers provided to it by DCSI. *See* ECF No. 32, ¶¶ 5-8.

*Settlement Website*: In addition, Verita established and maintains a website dedicated to the Settlement—http://www.DCSITCPAsettlement.com—that includes information pertinent to Settlement Class Members such as court filings, as well as answers to frequently asked questions. *Id*., ¶ 9. Settlement Class Members were able to view notice documents and submit claims via the settlement website. *Id*.

*Toll-Free Information Line*: Verita established and maintains a toll-free telephone number for Settlement Class Members to obtain information about the Settlement. *Id*., ¶ 10.

*Claims*: As of January 23, 2025, a total of 236 timely claims were received by Verita. *See* Supplemental Declaration of Gio Santiago re: Notice Procedures, attached as Exhibit A, ¶ 4.

*No exclusions*: No persons requested exclusion from the Settlement. *Id*., ¶ 5.

*No objections*: No Settlement Class Members objected to the Settlement, nor did any government official in response to notice provided in compliance with the Class Action Fairness Act. ECF No. 32, ¶¶ 2-4; Ex. A, ¶ 6.

**Argument**

**I.     This Court should confirm its certification of the Settlement Class.**

This Court previously certified this matter as a class action for settlement purposes and, in doing so, appointed Plaintiff as the class representative and his counsel as Class Counsel. ECF No. 29 at 2-3. Because nothing has changed in the interim warranting a departure from the Court's reasoning, Plaintiff respectfully submits that this Court should confirm its certification of the Settlement Class for settlement purposes. *See Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 683-84 (S.D. Fla. 2013) (certifying TCPA class action).

**II.    The Settlement is fair, reasonable, and adequate under Rule 23(e).**

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness of a class action settlement under Rule 23(e): "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994).

Rule 23(e) likewise requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e). Each relevant factor supports the conclusion that the Settlement is fundamentally fair, adequate, and reasonable, and should be approved.

> **A.     The Settlement was the product of arm's length negotiations by experienced counsel, and the result of mediation before a highly regarded neutral.**

The parties' arm's-length settlement negotiations, which were overseen by Mr. Duffy,

demonstrate the fairness of the Settlement, and that the Settlement is not a product of fraud or collusion. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) ("No indication appears that the settlement resulted from collusion. Rather, the parties settled with the assistance of court-appointed mediator Robert M. Daisley."). In addition, the parties' settlement discussions occurred after sufficient written discovery so that the parties could assess the number of potentially affected persons and the strengths and weaknesses of the claims at issue.

As a result, the parties—and counsel with extensive experience in TCPA litigation—were able to properly assess the strengths and weaknesses of their positions and evaluate the fairness of the Settlement.

> **B.     The complexity, expense and likely duration of the litigation favors approval of the Settlement.**

There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (noting "a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources").

This case was no different. Significant motion practice lay ahead, including a motion for class certification and competing motions for summary judgment. Given the considerable work already performed—and the work left to perform, including any appeals—resolution was warranted. *See, e.g.*, *Bennett*, 96 F.R.D. at 349-50 (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial").

## C. The factual record is sufficiently developed to enable Plaintiff and Class Counsel to make a reasoned judgment concerning the Settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

As noted above, the parties engaged in significant written discovery, focused both on Plaintiff's individual claims and on those of absent class members. The Settlement was, therefore, consummated when the parties were well-informed regarding the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

## D. The probability of Plaintiff's success on the merits and the range of possible recovery favor approval.

The Court is also to consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). However, that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350. This is because a settlement must be evaluated in light of the

8

attendant risks with litigation. *Id.* These factors also weigh in favor of the Settlement here.

While Plaintiff believes in his claims, by any objective assessment he faced real hurdles to obtaining class-wide relief. *See* Summary of the Settlement, § II. Despite these obstacles, and with the assistance of a respected mediator, Plaintiff negotiated a settlement that compares extremely favorably to other TCPA class action settlements. As noted, participating Settlement Class Members stand to receive more than $3,900 each.

In comparison, in *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla. Jan. 30, 2015), final approval was granted in a similar wrong number TCPA class action for $2.63 per person (settling claims of 3 million class members for $7.9 million). *See also, e.g.*, *Mannacio v. Sovereign Lending Grp. Inc.*, 2023 WL 6389792 (W.D. Wash. Oct. 2, 2023) (preliminarily approving $500,000 TCPA class action settlement, with expected per-claimant recovery of $115); *Wesley v. Snap Fin. LLC*, No. 2:20-cv-00148-RJS-JCB, 2023 WL 1812670 (D. Utah Feb. 7, 2023) ($77.10 per potentially affected telephone number); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 WL 1794559 (E.D. Mo. Feb. 7, 2023) ($6.42 per potentially affected telephone number); *Lucas v. Synchrony Bank*, No. 4:21-cv-70-PPS, ECF No. 47 (N.D. Ind. Nov. 18, 2022) (approximately $13 per potentially affected telephone number); *Lalli v. First Team Real Estate—Orange Cty.*, No. 8:20-cv-27-JWH, ADS, 2022 WL 8207530 (C.D. Cal. Sept. 6, 2022) (approving $478,500 TCPA settlement amounting to $110 per claimant); *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) (preliminary approval of wrong-number TCPA settlement amounting to $1.269 million, or approximately $7 per class member); *James*, 2016 WL 6908118, at *1 (preliminary approval of wrong number TCPA settlement for $5.55 per person).

Indeed, the Settlement provides immediate cash relief to the Settlement Class. After deducting the requested attorneys' fees, litigation costs and expenses, participating Settlement Class Members stand to receive approximately $3,930.00 each, an amount significantly higher than many Court-approved TCPA settlements. *See Lalli*, 2022 WL 8207530, at *12 (finding $110 per-class-member recovery to be "a strong result"); *James*, 2016 WL 6908118, at *2 ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action.") (citing *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action)). *See also Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that distributed less than $50 per claimant, *see* ECF No. 101); *Arthur v. Sallie Mae, Inc.*, No. 10-CV198-JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) ($20-$40 per participating class member); *Adams v. Allianceone Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, ECF No. 113 (S.D. Cal. Apr. 23, 2012) (approximately $1.48 per class member).

In sum, the Settlement constitutes an objectively excellent result for the Settlement Class. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

### E.   The opinions of Plaintiff and Class Counsel favor approval.

Class Counsel are highly experienced in class action litigation, having litigated consumer protection cases on a class-wide basis in many jurisdictions, including those under the TCPA. *See*

ECF Nos. 30-1, 30-2, 30-3. Plaintiff and Class Counsel firmly believe that the Settlement is fair, reasonable, and adequate, and in the best interests of Settlement Class Members.

Further, a strong initial presumption of fairness should attach to the proposed settlement because it was reached by experienced counsel after arm's-length negotiations. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

### F. The lack of objections to the Settlement by any governmental agency underscores its fairness.

While no governmental agency is a party to this lawsuit, Verita notified all pertinent government officials of the Settlement as required by the Class Action Fairness Act. ECF No. 32, ¶¶ 2-4. No governmental entity raised objections or concerns about the Settlement. Ex. A, ¶ 6. This factor therefore supports final approval.

### G. The extraordinarily positive reaction from Settlement Class Members—with no objections or exclusions—strongly supports final approval of the Settlement.

After a robust notice program that included direct mail notice and publication notice, 236 Settlement Class Members submitted claims, while none objected or opted out. Ex. A, ¶¶ 4-6.

The lack of objections or exclusions strongly supports approval of the Settlement. *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) ("Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable."); *Hall v. Bank of Am., N.A.*, No. 12-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (where objections from settlement class members "equates to less than .0016% of the class" and "not a

single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg., Inc.*, No. 13–60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," combined with few objections to class settlement, "such facts are overwhelming support for the settlement"); *Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) ("As to the fifth *Bennett* factor, the Court finds that the substance and amount of opposition to the settlement weighs in favor of the settlement's approval. No members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition.").

### H. The Settlement treats Settlement Class Members equitably.

Rule 23(e)(2)(D) requires that this Court confirm that the Settlement treats all Settlement Class Members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each Settlement Class Member will be treated equitably as each participating Settlement Class Member will receive an equal portion of the $1.5 million common fund, after deducting attorneys' fees, costs, and expenses, and the costs of class notice and administration. Given the number of claims, each participating Settlement Class Member stands to receive approximately $3,930.00. Thus, the allocation of the settlement proceeds treats Settlement Class Members fairly and equitably. *See Vu v. I Care Credit, LLC*, No. 17-cv-04609 RAO, 2022 WL 22871480, at *11 (C.D. Cal. Nov. 4, 2022) ("Here, each member had to submit the same claim form to receive a distribution from the settlement fund and each member who submitted a claim form will

receive an equal distribution. As the class members' TCPA claims are based on the same fax advertisements, equal distributions are fair.").

Moreover, the release affects each Settlement Class Member in the same way.[6] As such, this factor also supports approval of the Settlement.

### I. Plaintiff and Class Counsel have adequately represented the Settlement Class.

Lastly, Rule 23(e)(2)(A) requires that this Court determine that "the class representatives and class counsel have adequately represented the class." This Court previously appointed Plaintiff and Class Counsel to represent the Settlement Class. *See* ECF No. 29 at 3. Based on the excellent results obtained for Settlement Class Members and the high-quality work necessary to do so, Plaintiff and their counsel have demonstrated that they adequately represented the Settlement Class, and this Court should grant final approval to the Settlement.

### III. Distribution of class notice more than satisfied due process requirements.

Pursuant to Rule 23(e), in granting preliminary approval, this Court directed that Verita initiate the proposed notice plan, finding that it "complies with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and constitutes the best notice practicable under the circumstances." ECF No. 29 at 4; *see also Williams*, 2019 WL 1450090, at *5 (approving materially identical notice plan in wrong-number TCPA class action); *James*, 2016 WL 6908118, at *2 (same). Such notice must be—and was—the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

---

[6] While the release provided by Settlement Class Members is limited to the calls at issue, Plaintiff has agreed to provide a general release to DCSI that covers any claims Plaintiff could have against it. In exchange for this general release, DCSI will pay Plaintiff an additional $5,000. *See Sinkfield v. Persolve Recoveries, LLC*, No. 2023 WL 511195, at *3 n.2 (S.D. Fla. Jan. 26, 2023).

13

Following this guidance, Verita distributed notice in the manner directed by the Court's Preliminary Approval Order and that exceeded this standard. In particular, Verita used all reasonable efforts to provide direct mail notice to each potential Settlement Class Member. *See generally* ECF No. 32. And Verita supplemented this direct mail notice through a dedicated settlement website and toll-free telephone number. *Id.*; *accord* Ex. A.

Given this robust and overinclusive notice campaign, that 236 Settlement Class Members submitted claims further supports approval and suggests a claims rate of more than 7%. *See, e.g.*, *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-CV-05486-JCS, 2018 WL 8949777, at *4 (N.D. Cal. Oct. 15, 2018) (collecting cases approving settlements with claims rates between 2% and 4%); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (2.5% claims rate); *accord Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) ("a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness").

In summary, the notice plan amply protected Settlement Class Members' due process rights.

### Conclusion

Plaintiff respectfully submits that the Settlement—which required DCSI to pay $1.5 million into an all-cash, non-reversionary common fund—constitutes an exceptional result for Settlement Class Members. To be sure, the approximately $3,930.00 that each participating Settlement Class Member stands to receive can only be viewed as a tremendous success.

For the foregoing reasons, Plaintiff respectfully requests that this Court finally approve the Settlement and enter a final judgment and order in the form agreed to by the parties and submitted concurrently.

| | |
|---|---|
| Date: January 28, 2025 | */s/ Michael Greenwald* <br> Michael L. Greenwald (admitted *pro hac vice*) <br> GREENWALD DAVIDSON RADBIL PLLC <br> 5550 Glades Road, Suite 500 <br> Boca Raton, FL 33431 <br> Tel: (561) 826-5477 <br> mgreenwald@gdrlawfirm.com <br><br> Anthony I. Paronich (admitted *pro hac vice*) <br> PARONICH LAW, P.C. <br> 350 Lincoln Street, Suite 2400 <br> Hingham, MA 02043 <br> Tel: (617) 485-0018 <br> Fax: (508) 318-8100 <br> anthony@paronichlaw.com <br><br> Steven H. Koval <br> THE KOVAL FIRM, LLC <br> 3575 Piedmont Rd., NE 15 <br> Piedmont Center, Suite 120 <br> Atlanta, GA 30305 <br> Tel: (404) 513-6651 <br> Steve@KovalFirm.com <br><br> *Class Counsel* |